WEST MICHIGAN HEALTH CARE NETWORK v TRANSAMERICA
INSURANCE CORPORATION OF AMERICA

Docket No. 95619. Submitted February 4, 1988, at Lansing. Decided
March 9, 1988.

Khiem Nguyen was seriously injured in an automobile collision
and required extensive treatment. Nguyen belonged to West
Michigan Health Care Network's health maintenance organiza-
tion and also had a policy of no-fault automobile insurance
with Transamerica Insurance Corporation of America. Both the
HMO's member certificate and Transamerica's policy provided
for personal injury protection benefits and contained coordina-
tion of benefits clauses. Both West Michigan Health Care
Network and Transamerica paid for Nguyen's medical expen-
ses, but then disputed which one was primarily liable for the
medical expenses. West Michigan Health Care Network filed
suit against Transamerica in Ingham Circuit Court seeking a
declaratory judgment that Transamerica was primarily liable
for the medical expenses and requesting that the court order
Transamerica to reimburse plaintiff for all the medical expen-
ses it had paid. Defendant responded that plaintiff was not
entitled to relief because of the coordination of benefits clause
in defendant's policy and counterclaimed for the amount it had
already spent on the medical expenses. Defendant moved for
summary disposition contending that, under Michigan law, the
coordination of benefits provision in the no-fault policy required
that plaintiff be primarily liable for the medical expenses.
Plaintiff responded that defendant's claims were preempted by
the federal Employee Retirement Income Security Act. The
court, Robert Holmes Bell, J., granted summary disposition in
favor of defendant. Plaintiff appealed.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Insurance §§ 1094-1099, 1781 *et seq.*

Applicability of other insurance benefits exclusion, from coverage of
hospital or health and accident policy, to governmental insurance
benefits to which insured would have been entitled by prior
subscription. 29 ALR4th 361.

Priority and apportionment of liability between medical and hospi-
tal expense insurers. 25 ALR4th 1022.

1. Where the coordinated benefits provisions of a health insurance policy and a no-fault automobile insurance policy conflict, the health coverage insurer is primarily liable for the payment of medical expenses incurred by the insured.

2. Services offered by a health maintenance organization constitute "health and accident coverage" as defined by the no-fault act. An HMO therefore may be considered a health coverage insurer.

3. The federal Employee Retirement Income Security Act does not preempt Michigan insurance law where the employee benefit plan at issue, as here, is commercially insured. ERISA preempts only self-funded insurance plans.

4. Because an HMO shifts the risk of health care expenses away from its members, it constitutes a form of insurance and, as such, the state laws which regulate it escape ERISA preemption.

5. The section of the no-fault act applicable here does not conflict with or frustrate the purpose of the federal HMO act. That act permits an HMO to be reimbursed for services rendered to its members where the member is entitled to benefits from an insurance policy. However, when a member chooses to have a coordinated automobile insurance policy, as in this case, the HMO is liable for primary medical expenses and can only seek reimbursement for the excess benefits that its members are entitled to under a coordinated automobile insurance policy.

Affirmed.

1. INSURANCE — NO-FAULT — HEALTH MAINTENANCE ORGANIZATIONS — COORDINATION OF BENEFITS — PRIMARY LIABILITY.

   A health insurance carrier is primarily liable for payment of medical expenses resulting from injuries suffered in an automobile accident where the insured has coordinated benefits provisions under both the health insurance and his no-fault automobile insurance (MCL 500.3109a; MSA 24.13109[1]).

2. INSURANCE — NO-FAULT — HEALTH AND ACCIDENT COVERAGE — HEALTH MAINTENANCE ORGANIZATIONS.

   Services offered by a health maintenance organization that are prepaid by the participant constitute health and accident coverage as defined by the section of the no-fault automobile insurance act allowing an insurer who provides personal protection insurance benefits to offer reduced premiums to its insured where the insured has other health and accident coverage; an HMO under these circumstances may be considered a health coverage insurer (MCL 500.3109a; MSA 24.13109[1]).

3. Insurance — Employee Retirement Income Security Act — Preemption — Self-Insurers.

The Employee Retirement Income Security Act does not preempt Michigan insurance law where the employee benefit plan at issue is commercially insured; ERISA preempts only self-funded insurance plans (29 USC 1144[b][2][A],[B]).

4. Insurance — Health Maintenance Organizations — Employee Retirement Income Security Act — Preemption.

A health maintenance organization shifts the risk of health care expenses away from its members, and for this reason may be considered a health coverage insurer; because an HMO may be considered a health coverage insurer, the state laws which regulate HMOs escape preemption by the Employee Retirement Income Security Act (29 USC 1144[b][2][A]).

5. Insurance — No-Fault — Health Maintenance Organizations — Employee Retirement Income Security Act — Coordination of Benefits — Primary Liability.

The section of the no-fault automobile insurance act that requires a no-fault automobile insurer to offer coordinated benefits to its insured at reduced rates and provides that the health and accident coverage provider will be primarily liable for medical benefits in the case of an accident does not conflict with or frustrate the effectiveness of the Employee Retirement Income Security Act, which permits a health maintenance organization to be reimbursed for services rendered to a member where the member is entitled to benefits from an insurance policy; where an HMO member chooses to have a coordinated automobile insurance policy, the HMO is liable for primary medical expenses and can only seek reimbursement for the excess benefits that its member is entitled to under the coordinated automobile insurance policy (42 USC 300e[b][1], MCL 500.3109a; MSA 24.13109[1]).

*West Michigan Health Care Network* (by *Steven C. Hess* and *Teresa Mikan*), for plaintiff.

*Dilley, Dewey & Damon, P.C.* (by *Jonathon S. Damon*), for defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *William A. Chenoweth,* Assistant Attorneys General, for intervening defendant-appellee.

Amici Curiae:

*Miller, Canfield, Paddock & Stone* (by *Lawrence D. Owen* and *Charles L. Sweeris*), for Association of Health Maintenance Organizations in Michigan.

*Kohl, Screst, Wardle, Lynch, Clark & Hampton* (by *Mark E. Morley* and *Janet G. Callahan*), for Michigan Association of Insurance Companies.

Before: BEASLEY, P.J., and G. R. MCDONALD and J. P. JOURDAN,* JJ.

PER CURIAM. Plaintiff, West Michigan Health Care Network, appeals as of right from a September 17, 1986, judgment in favor of defendant, Transamerica Insurance Corporation of America, for $5,001.30, plus interest and costs. This case is a declaratory judgment action brought to determine which party was primarily liable for medical expenses incurred by Khiem Nguyen after he was injured in an automobile collision. On appeal, we granted the Attorney General's motion to intervene.[1]

On July 8, 1984, Khiem Nguyen was seriously injured in an automobile collision and required extensive medical treatment. At the time of the accident, Nguyen belonged to plaintiff's health maintenance organization (HMO) and had a policy of no-fault automobile insurance with defendant. Both plaintiff's member certificate and defendant's policy provide for personal injury protection benefits and contain coordination of benefits clauses.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The Association of Health Maintenance Organizations in Michigan and Michigan Association of Insurance Companies have submitted amicus curiae briefs.

Section 5.06 of plaintiff's member certificate provides:

> 5.06 EMPLOYMENT OR AUTO RELATED INJURY OR
> ILLNESS
> Benefits provided for services related to any
> employment related condition, disease, or injury
> for which Workers' Compensation or any similar
> program provides reimbursement or for any auto-
> mobile related injury to the extent there is cover-
> age under any no-fault automobile policy shall be
> billed by WMHCN to the responsible carrier or
> program. Where services are provided, WMHCN or
> the Primary Care Physician is assigned the mem-
> ber's rights to seek reimbursement.

Defendant's no-fault policy's coordination of benefits clause provides:

> The Company shall not be liable to the extent
> any Personal Protection Insurance allowable ex-
> penses benefits are paid, payable, or required to be
> provided to or on behalf of the person named in
> the Policy . . . under the provisions of any valid
> and collectible
> 1. individual, blanket or group accident disabil-
> ity or hospitalization insurance,
> 2. medical or surgical reimbursement plan,
> 3. workmen's compensation or disability laws of
> a similar nature or any other State or Federal
> Government law, or
> 4. automobile or premises insurance affording
> medical expense benefits.

Both parties paid for Nguyen's medical expenses. Thereafter, both parties disputed which one was primarily liable for the insured's medical expenses. On July 3, 1985, plaintiff brought a complaint for declaratory judgment, asking the trial court to determine which party was primarily liable for the medical expenses and also requesting

that the court order defendant to reimburse plaintiff for all the medical expenses it had paid. Defendant responded that plaintiff was not entitled to relief because of the coordination of benefits clause in Transamerica's policy. Additionally, defendant counter-claimed for the amount it already had spent on the medical expenses.

On February 20, 1986, defendant moved for summary disposition pursuant to MCR 2.116(C)(10), contending that, under Michigan law, the coordination of benefits provision in the no-fault automobile policy required that plaintiff be primarily liable for the medical expenses. Plaintiff responded that defendant's claims were preempted by the Employee Retirement Income Security Act.[2]

On July 8, 1986, the trial court decided that plaintiff was primarily liable for the medical expenses and granted defendant's motion for summary disposition. After the parties stipulated to the amount of damages, the court entered the judgment from which plaintiff appeals.

The relevant portion of Michigan's no-fault insurance act, MCL 500.3109a; MSA 24.13109(1), provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household.

In *Federal Kemper Ins Co, Inc v Health Ins*

[2] 29 USC 1001 *et seq.*

*Administration, Inc,*[3] the Michigan Supreme Court held that, where the coordinated benefits provisions of a health insurance policy and a no-fault automobile insurance policy conflict, the health coverage insurer should be primarily liable for the payment of medical expenses incurred by the insured. The Court indicated that its decision would further the legislative intent of § 3109a by containing both auto insurance and health care costs, eliminating duplicative recovery and vesting in the insured the option of coordinating benefits.

Here, both plaintiff's HMO member certificate and defendant's no-fault automobile policy contain coordination of benefits clauses. Plaintiff contends that the instant case is distinct from *Federal Kemper* because plaintiff is an HMO, not a health coverage insurer. In *United States Fidelity & Guaranty Co v Group Health Plan of Southeast Michigan,*[4] this Court held that services offered by an HMO constitute "health and accident coverage" as defined by MCL 500.3109a; MSA 24.13109(1). The Court determined that the HMO was primarily liable for medical expenses where both the HMO contract and the no-fault automobile insurance policy had coordination of benefits clauses. Under *Federal Kemper and United States Fidelity,* therefore, the within plaintiff should be primarily liable for the instant medical expenses.

Plaintiff, however, argues that the *Federal Kemper* case and MCL 500.3109a; MSA 24.13109(1) do not apply here because ERISA preempts them. ERISA subjects employee benefit plans to federal regulation. Section 514(a) of ERISA[5] preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered

[3] 424 Mich 537; 383 NW2d 590 (1986).
[4] 131 Mich App 268, 272-273; 345 NW2d 683 (1983).
[5] 29 USC 1144(a).

by ERISA, except for state laws regulating insurance, banking or securities, which are exempt from preemption pursuant to 29 USC 1144(b)(2)(A).[6]

In *Metropolitan Life Ins Co v Massachusetts*,[7] the United States Supreme Court held the "insurance savings clause"[8] saved a Massachusetts statute from ERISA preemption because the state law regulated insurance. The Court stated:

> The presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope.[9]

In *Benike v Scarborough Ins Trust*,[10] the defendants contended that ERISA preempted an otherwise applicable Michigan insurance law because plaintiff's health insurance coverage was provided under an employee benefit plan. This Court, citing *Metropolitan Life Ins Co, supra,* held that the "insurance savings clause" saves Michigan insurance law from ERISA preemption.

In *State Farm Mutual Automobile Ins Co v C A Muer Corp*,[11] this Court held that ERISA preempted Michigan law since the employee benefit plan at issue was an uninsured plan that was self-funded by the employer. In its decision, this Court distinguished between commercially insured and uninsured employee benefit plans and determined that ERISA would preempt only self-funded plans.

Plaintiff herein argues that ERISA preemption is

---

[6] See *Shaw v Delta Air Lines, Inc,* 463 US 85, 91; 103 S Ct 2890; 77 L Ed 2d 490 (1983).

[7] 471 US 724; 105 S Ct 2380; 85 L Ed 2d 728 (1985).

[8] 29 USC 1144(b)(2)(A).

[9] *Metropolitan Life, supra,* at 741.

[10] 150 Mich App 710, 714; 389 NW2d 156 (1986).

[11] 154 Mich App 330; 397 NW2d 299 (1986).

required in the instant case because Nguyen's health care coverage was purchased as part of a General Motors employee benefit plan. The instant medical benefit plan, however, was commercially insured through plaintiff; it was not an uninsured plan funded by General Motors. The insurance savings clause in the federal statute, therefore, saves the applicable Michigan insurance law from ERISA preemption.[12]

Plaintiff argues that an HMO is not health insurance, but a health care provider. This argument fails, however, because an HMO shifts the risk of health care expenses away from its members. The transfer of risk away from the insured is. the distinguishing characteristic of an insurance plan. A self-funded plan itself bears the risk of paying all covered expenses. An insurance company, on the other hand, charges a fixed premium to its policyholders and assumes the risk of payment of future covered expenses. An HMO is very similar to an insurance company because it receives a fixed premium and thereafter it and its participating physicians assume the risk. Here, plaintiff pays a fixed fee per member to its participating physicians, who bear the risk of future covered expenses. Because plaintiff transfers the risk away from its members, the HMO constitutes a form of insurance and, as such, the state laws which regulate it escape ERISA preemption.

Next, amicus curiae Association of Health Maintenance Organizations in Michigan argues for plaintiff that the federal HMO act[13] preempts § 3109a of the Michigan no-fault act. The association claims the state act is invalid because it

---

[12] *Northern Group Services, Inc v Auto-Owners Ins Co,* 833 F2d 85 (CA 6, 1987), would save most self-insured plans, as well as insured plans from ERISA preemption.

[13] 42 USC 300e *et seq.*

conflicts with and frustrates the effectiveness of the federal statute. We disagree. MCL 500.3109a; MSA 24.13109(1) does not conflict with or frustrate the purpose of the federal HMO act. 42 USC 300e(b)[14] permits health maintenance organizations

[14] 42 USC 300e(b) provides:

(b) A health maintenance organization shall provide, without limitations as to time or cost other than those prescribed by or under this subchapter, basic and supplemental health services to its members in the following manner:

(1) Each member is to be provided basic health services for a basic health services payment which (A) is to be paid on a periodic basis without regard to the dates health services (within the basic health services) are provided; (B) is fixed without regard to the frequency, extent, or kind of health service (within the basic health services) actually furnished; (C) except in the case of basic health services provided a member who is a full-time student (as defined by the Secretary) at an accredited institution of higher education, is fixed under a community rating system; and (D) may be supplemented by additional nominal payments which may be required for the provision of specific services (within the basic health services), except that such payments may not be required where or in such a manner that they serve (as determined under regulations of the Secretary) as a barrier to the delivery of health services. Such additional nominal payments shall be fixed in accordance with the regulations of the Secretary. A health maintenance organization may include a health service, defined as a supplemental health service by section 300e-1(2) of this title, in the basic health services provided its members for a basic health services payment described in the first sentence. In the case of an entity which before it became a qualified health maintenance organization (within the meaning of section 300e-9(d) of this title) provided comprehensive health services on a prepaid basis, the requirement of clause (C) shall not apply to such entity until the expiration of the forty-eight month period beginning with the month following the month in which the entity became such a qualified health organization. The requirements of this paragraph respecting the basic health services payment shall not apply to the provision of basic health services to a member for an illness or injury for which the member is entitled to benefits under a workmen's compensation law or an insurance policy but only to the extent such benefits apply to such services. For the provision of such services for an illness or injury for which a member is entitled to benefits under such a law, the health maintenance organization may, if authorized by such law, charge or authorize the provider of such services to charge, in accordance with the charges allowed under such law, the insurance carrier, employer, or other

to charge insurance companies for services provided to an insured only where the applicable law or insurance policy entitles the insured to insurance benefits. MCL 500.3109a; MSA 24.13109(1) requires a no-fault automobile insurer to offer coordinated benefits to its insured at reduced rates and provides that the health and accident coverage provider will be primarily liable for medical benefits in the case of an accident.

The federal and state statutes work together to allow coordination of benefits in order to reduce insurance rates and avoid duplicative recovery. Pursuant to § 3109a, insureds who select coordinated no-fault insurance will receive primary medical benefits from their health and accident coverage and any excess medical benefits from the no-fault automobile insurer. Conversely, insureds who select noncoordinated no-fault insurance will receive primary medical benefits from their no-fault insurer. Moreover, pursuant to 42 USC 300e(b)(1), an HMO is entitled to receive reimbursement from an automobile insurer that is primarily liable under a noncoordinated policy for medical services provided by the HMO to the insured. Also, an HMO is entitled to receive reimbursement from an automobile insurer liable under a coordinated policy for all excess benefits provided to the insured.

Section 3109a does not conflict with 42 USC 300e(b)(1) because the Michigan statute does not prevent an HMO from receiving reimbursement for

entity which under such law is to pay for the provision of such services or, to the extent that such member has been paid under such law for such services, such member. For the provision of such services for an illness or injury for which a member is entitled to benefits under an insurance policy, a health maintenance organization may charge or authorize the provider of such services to charge the insurance carrier under such policy or, to the extent that such member has been paid under such policy for such services, such member.

its services, as provided by the federal HMO act. In summary, 42 USC 300e(b)(1) permits an HMO to be reimbursed for services rendered to a member where the member is entitled to benefits from an insurance policy. However, when a member chooses to have a coordinated automobile insurance policy, then an HMO is liable for primary medical expenses and can only seek reimbursement for the excess benefits that its members are entitled to under a coordinated automobile insurance policy.

Furthermore, the HMO act, although it has a section that preempts specific state laws,[15] does not expressly preempt or invalidate state laws that provide for coordination of benefits.

Affirmed.

---

[15] 42 USC 300e(10).