## GIBBARD v AUTO-OWNERS INSURANCE COMPANY

Docket No. 105505. Submitted February 13, 1989, at Lansing. Decided August 7, 1989. Leave to appeal applied for.

Yvonne Lisa Gibbard sustained injuries, which required medical treatment, in an automobile accident at a time when she was covered by no-fault automobile insurance policies issued by Auto-Owners Insurance Company and Farm Bureau General Insurance Company of Michigan and by a group health insurance policy issued by The Guardian Life Insurance Company. The automobile insurers, whose policies contained no provisions for the coordination of benefits, paid Gibbard's medical expenses. Gibbard filed a claim for benefits with the health insurer, which denied the claim on the basis of the coordination-of-benefits provision in its policy. Gibbard brought an action in Lapeer Circuit Court against all three insurers. Guardian Life filed a motion for summary disposition. The trial court, Norman A. Baguley, J., granted the motion, ruling that there existed no genuine issue of material fact and Guardian Life was entitled to judgment as a matter of law. Plaintiff appealed.

The Court of Appeals *held:*

The elimination of duplicative recovery and the containment or reduction of insurance costs, determined by the Supreme Court in *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537 (1986), to be the Legislature's objectives in allowing no-fault insurers to provide for coordinated benefits in exchange for reduced premiums, is best achieved in this case by giving effect to the coordination-of-benefits provision in Guardian Life's group health insurance policy.

Affirmed.

MURPHY, P.J., dissented, opining that the majority's holding totally vitiates the legislatively mandated options provided to insureds under the provisions of the no-fault act relating to coordination of benefits since the insured in this case received nothing in return for the higher premiums paid to the no-fault insurers. Judge Murphy would hold that, in the absence of any

REFERENCES

Am Jur 2d, Automobile Insurance § 359.
See the Index to Annotations under No-Fault Insurance.

evidence indicating that the group health insurer reduced its premiums in exchange for the coordination of benefits under its policy, summary disposition was improper.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE —
    COORDINATION OF BENEFITS.

    Expenses incurred for the medical treatment of a person injured in an automobile accident while insured under a no-fault automobile policy which does not provide for coordination of personal protection insurance benefits with other health and accident coverage and insured under a group health insurance policy which provides for coordination of benefits with other insurance are payable by the no-fault automobile insurer only (MCL 500.3109a; MSA 24.13109[1]).

*Taylor, Carter, Butterfield, Riseman, Clark & Howell, P.C.* (by *Carl M. Riseman*), for plaintiff.

*Seavitt, Westcott & Stowe* (by *Michael J. Yockey*), for The Guardian Life Insurance Company.

Before: MURPHY, P.J., and WEAVER and McDON-ALD, JJ.

McDONALD, J. Plaintiff appeals as of right from an order granting summary disposition in favor of defendant The Guardian Life Insurance Company pursuant to MCR 2.116(C)(10), no genuine issue of material fact. We affirm.

On December 27, 1985, plaintiff was injured when the automobile in which she was a passenger was involved in an accident. Plaintiff's medical expenses were reimbursed by her parents' no-fault noncoordinated benefits insurance policies provided by defendants Auto-Owners Insurance Company and Farm Bureau General Insurance Company of Michigan.

At the time of the accident plaintiff was covered through her employer by a group health insurance policy issued by defendant Guardian Life. Plaintiff

also applied to Guardian Life for reimbursement of medical expenses under this group policy. Guardian Life rejected plaintiff's claim arguing the group policy's coordination-of-benefits clause barred plaintiff's claim.

Following Guardian Life's rejection of plaintiff's claim, plaintiff filed the instant action for benefits under the group policy. Thereafter, Guardian Life filed a motion for summary disposition pursuant to MCR 2.116(C)(10) claiming no genuine issue of material fact existed as plaintiff was primarily covered under another insurance policy which already reimbursed plaintiff for her medical costs. The trial court found defendant Guardian secondarily liable to the no-fault policies and granted defendant's motion for summary disposition.

On appeal plaintiff claims the trial court erred in failing to find Guardian Life liable for loss despite the policy's inclusion of a coordination clause. Plaintiff argues that giving effect to the health insurer's coordination clause contravenes § 3109a of the no-fault insurance act which provides:

> An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured. The deductibles and exclusions required to be offered by this section shall be subject to prior approval by the commissioner and shall apply only to benefits payable to the person named in the policy, the spouse of the insured and any relative of either domiciled in the same household. [MCL 500.3109a; MSA 24.13109(1)]

Plaintiff relies on our Supreme Court's decision in *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986), to support this claim.

In *Federal Kemper,* the Court found that this provision (§ 3109a), and the legislative intent behind it, preclude giving effect to a coordination clause in health insurance when the insured's no-fault medical benefits are coordinated. The Court found § 3109a to have dual purposes: the elimination of duplicative recovery and the containment or reduction of insurance costs.

To effectuate these purposes, the Court in *Federal Kemper* chose to give a no-fault coordination clause priority over a similar clause in the insured's health insurance policy. However, the Court expressly limited its decision to situations where an insured has opted for coordinated no-fault benefits. Such is not the situation in the instant case. Here, the insured has noncoordinated no-fault insurance and coordinated health insurance. Nonetheless, plaintiff contends the legislative goal of providing persons insured under no-fault the ability to reduce their premiums by obtaining less coverage via coordination prohibits a health insurer from making its insurance secondary to noncoordinated no-fault benefits. We disagree.

Although we agree to some degree that allowing coordination in circumstances similar to those presented here would limit a no-fault insured's choice under § 3109a, we believe the major purposes of the statute are advanced by the trial court's treatment of the issue. Presumably, plaintiff's employer pays smaller premiums, thus keeping the cost of insurance contained, and duplicative recovery is eliminated.

Additionally, a recent decision of this Court upholds a lower court's grant of summary disposition under circumstances similar to those presented here. In *Estabrook v Lincoln National Life Ins Co,* 172 Mich App 450; 432 NW2d 733 (1988), a plaintiff who had noncoordinated no-fault insur-

ance and coordinated group disability insurance was injured in a motorcycle accident. The trial court granted summary disposition to plaintiff's disability insurer finding its coordination provision effective. In so holding, the court relied on MCL 550.3610a; MSA 24.13610(1), which specifically authorizes a group disability insurance policy to provide for the coordination of benefits with benefits payable for the same loss under automotive medical payments insurance. Thus, plaintiff's assertion that the Legislature intended no infringement on an insured's choice of coordinated or uncoordinated no-fault insurance must be rejected.

Affirmed.

WEAVER, J., concurred.

MURPHY, P.J. *(dissenting)*. I dissent. This case brings to light an interesting issue regarding the meaning of an insured's options under the state's no-fault act.

Our Supreme Court in *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537; 383 NW2d 590 (1986), held that, where the coordinated benefits provisions of a health insurance policy and a no-fault automobile policy conflict, the health insurer is primarily liable for the payment of medical expenses incurred by the insured. *Id.,* p 551. The Court emphasized that this result is consistent with the Legislative scheme of vesting in the insureds, rather than the insurers, the option of coordinating benefits. *Id.,* pp 551-552. That option expressly includes an insured paying a lower premium for coordinated medical benefits coverage. See MCL 500.3109a; MSA 24.13109(1). Moreover, the Supreme Court expressed no view whatsoever as to what the result would be when the insured does not elect coordinated no-fault

benefits and, as a result, the no-fault premium is not correspondingly reduced. *Federal Kemper, supra,* p 552, n 10.

In my view, the majority's holding totally vitiates the legislatively mandated option provided to insureds in § 3109a of the no-fault act. I find it inconsistent with the legislative scheme that the insured in this case, who is covered by a coordinated benefits health policy, gets absolutely nothing in return for the *higher* premiums paid to her no-fault automobile insurers. Under the majority opinion, since a health and accident insurer is allowed without qualification or condition to coordinate its benefits with no-fault automobile insurance, the insured has nothing to gain by electing a noncoordinated automobile insurance policy. This result effectively destroys the election that the Legislature provided to those who own a motor vehicle, who by law are required to obtain insurance affording personal injury protection and other benefits. See MCL 500.3101; MSA 24.13101.

It is true that plaintiff received payment for her medical expenses from her no-fault carriers. However, she could have realized the same benefits had she not opted to pay the higher premium. If plaintiff had been covered by the less expensive coordinated no-fault benefits option, under the mandate of *Federal Kemper,* her health insurer would have been primarily liable for her medical expenses and her no-fault carriers would have picked up any gaps in the health insurer's coverage. See, e.g., *West Michigan Health Care Network v Transamerica Ins Corp of America,* 167 Mich App 218, 228; 421 NW2d 638 (1988). Plaintiff, then, gets absolutely nothing for the additional premium dollars paid to her no-fault insurers.

I do not believe that this result is a matter of a consumer making a bad choice when deciding not

to coordinate her medical benefits coverage under the no-fault policy. Rather, the insured's option, granted by the Legislature in § 3109a, has been rendered a nullity. What possible good is there in vesting the insured with a choice under § 3109a when that choice is made meaningless in situations where the insured is also covered by a coordinated health insurance plan?

Our Supreme Court in *Federal Kemper* in addressing the consumer's option to select or reject deductibles based on his existing nonautomotive health and accident coverage stated the following:

> Recently, the Court of Appeals decided *Auto Club Ins Ass'n v Frederick & Herrud, Inc,* 145 Mich App 722; 377 NW2d 902 (1985), a case similar to the instant case. There, despite a clearly stated attempt by the health insurer to evade primary liability, the Court discerned the legislative intent that no-fault coverage would be secondary, and, therefore, deemed the health insurance primary. We are persuaded that a similar analysis and result is proper in the instant case.
>
> * * *
>
> Defendant [health insurer] urges that the objectives of eliminating duplicative recovery and containing insurance costs would also be served by giving effect to its coordination of benefits clause, thereby making its coverage secondary and plaintiff's [no-fault insurance carrier] primary.
>
> However, we note that the health insurer in *Frederick & Herrud* made a similar argument, which was rejected by the Court. Section 3109a requires "prior approval by the commissioner" of "[t]he deductibles and exclusions" offered by no-fault carriers. By contrast, defendant, like the health insurer in *Frederick & Herrud,* points to no evidence on the record that the Insurance Commissioner has approved its coordinated benefits coverage. The *Frederick & Herrud* panel continued:
>
> "There is further no evidence that defendant's

coordination-of-benefits clause was offered in such a way as to foster consumer savings, a major goal of § 3109a, . . . or as to how premiums or employee co-pay were affected by this clause to insure that defendant is not reaping unearned premiums. That is, because no-fault is mandatory and coordination of benefits must be offered *at a reduced rate,* the insured gains an advantage from such a clause by the required reduction in premium while the insurer's reduced profits reflect a corresponding reduction in its potential liability. No such check necessarily applies to health and accident insurance. It would not be difficult to simply insert a coordination-of-benefits clause in a health and accident policy without a corresponding reduction in premium or co-pay where the determination of primary liability is covered by the policy language. [*Id.,* p 733. Emphasis in original.]"

*Similarly, other than defendant's conclusory statement that by offering coordination of benefits it "is able to offer reduced premiums," there is no record evidence that its coordinated benefits coverage is offered at lower rates.* [*Federal Kemper, supra,* pp 545-546, 549-500. Emphasis added.]

Similarly, in this case it is clear that no evidence was presented to support a conclusion that plaintiff's employer paid a lower premium because its group health policy provided coordinated benefits. From this record it cannot be determined whether defendant simply inserted the coordination-of-benefits clause in its contract with plaintiff's employer without a corresponding reduction in the premium charged.

I recognize that our Supreme Court in *Federal Kemper* also noted that other purposes of § 3109a include containing both auto insurance costs and health care costs, and eliminating duplicative recovery. *Id.,* p 551. However, as long as an insured is paying a higher premium, there should be some corresponding return to the insured for paying

that premium. Under the facts of this case, why shouldn't the appropriate return to the insured for the payment of that higher premium be allowing plaintiff to recover benefits from both insurers? After all, it is undisputed that premiums were paid to both the no-fault and health insurers. Absent some return to plaintiff for the additional premiums which were paid to the no-fault insurers, plaintiff has done nothing other than subsidize her health insurer. See *Haefele v Meijer, Inc,* 165 Mich App 485, 499; 418 NW2d 900 (1987). At the very least, proofs should be presented to establish that a lower premium was charged by the health insurer so that the legislative option under § 3109a is not rendered a nullity.

Therefore, in consideration of the foregoing, I simply am not prepared on the facts of this record to support a resolution by summary disposition. I would reverse the lower court's order granting defendant's motion for summary disposition.