WIELINGA v AMERICAN WAY LIFE INSURANCE COMPANY

Docket No. 126064. Submitted March 12, 1991, at Grand Rapids. Decided May 20, 1991, at 9:20 A.M. Leave to appeal sought.

Kornelus J. and Linda A. Wielinga brought an action in the Kalamazoo Circuit Court against American Way Life Insurance Company, seeking disability benefits under a credit disability insurance policy issued in connection with Kornelus Wielinga's purchase of a vehicle. The defendant had denied coverage on the basis that Kornelus Wielinga, who claimed disability, had not satisfied the policy requirement that an insured, to be eligible for disability benefits, had to be actively at work for at least thirty hours a week for sixty consecutive days immediately preceding the date of the certificate of disability coverage. The trial court, Philip D. Schaefer, J., granted the defendant's motion for summary disposition, finding that there was no genuine issue of material fact that Kornelus Wielinga was not actively at work for the requisite period. The plaintiffs appealed, claiming that Kornelus Wielinga met the policy's requirement that he be actively at work because he had been working as an unpaid apprentice for the requisite period.

The Court of Appeals *held:*

Because the policy does not define the term "actively at work," that term is to be given its ordinary and plain meaning. The ordinary and plain meaning of the word "work" indicates that that word is not synonymous with the concept of gainful employment and does not necessitate the conclusion that work be employment for remuneration. An unpaid apprenticeship can come within the meaning of the word "work." This conclusion is not inconsistent with the purpose behind the eligibility requirement, namely, the determination that the insured is in reasonably good health, inasmuch as no medical examination was required, because the question is not if and to what extent the insured is being paid for work, but whether the insured is capable of productive labor, as demonstrated by the fact that

REFERENCES

Am Jur 2d, Insurance §§ 286, 517.
See the Index to Annotations under Apprenticeship; Health and Accident Insurance; Labor and Employment.

he is working. A jury reasonably could determine that Wielinga was engaged in an unpaid apprenticeship that constituted being "actively at work" within the meaning of the eligibility requirements for coverage under the policy at issue. The trial court erred in granting summary disposition for the defendant.

Reversed and remanded.

INSURANCE — WORDS AND PHRASES — ACTIVELY AT WORK — UNPAID APPRENTICESHIP.

An insured may be considered to have been actively at work for purposes of a provision in a credit disability insurance policy that requires the insured to have been actively at work for a specific period immediately preceding the date of the certificate of disability coverage where the policy does not define the term "actively at work" and the insured was actively engaged as an unpaid apprentice for the requisite period in an attempt to learn a trade; the word work is not synonymous with the concept of gainful employment, and work need not be employment for remuneration.

*Michael P. Sullivan, P.C.* (by *Michael P. Sullivan*), for the plaintiffs.

*Law Offices of William Azkoul* (by *William M. Azkoul*), for the defendant.

Before: SHEPHERD, P.J., and SAWYER and REILLY, JJ.

SAWYER, J. Plaintiffs appeal from a grant of summary disposition in favor of defendant pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). We reverse.

This case involves the interpretation of a credit disability insurance policy, specifically the term "actively at work." The insurance policy involved in this case was issued in connection with Kornelus Wielinga's purchase of a vehicle on May 28, 1987. Plaintiffs claim that Kornelus Wielinga became totally disabled as of December 31, 1987. Defendant claims that Wielinga was not eligible for disability benefits under the terms of the policy

because he had not been actively at work for at least thirty hours a week for sixty consecutive days immediately preceding the date of the issuance of the disability policy. Under the policy, to be eligible for disability benefits, the insured must have been "actively at work for at least 30 hours per week for 60 consecutive days immediately preceding the date" of the certificate of disability coverage. Defendant maintains, and the trial court agreed, that there was no genuine issue of material fact that Wielinga was not "actively at work" for the requisite period.

A review of Kornelus Wielinga's work history is in order. Before December 24, 1987, he was employed for a number of years at Hardings Market as a cashier and dairy manager. In early 1986, he suffered a work-related injury to his lower back, specifically a herniated disc. Wielinga's attending physician recommended surgery. However, before surgery could be performed, on March 18, 1986, Wielinga was involved in an automobile accident and suffered a compression fracture of the thoracic spine. Because of medical restrictions, Wielinga was on medical leave from Hardings between March 18, 1986, and May 4, 1987. Wielinga's physician permitted him to return to work at Hardings Market on May 4, 1987, some twenty-four days before the purchase of the vehicle and the procurement of the credit disability policy.

In the meantime, however, Wielinga began to recover a degree of his physical health and, on February 2, 1987, commenced working approximately thirty-two hours a week at Gazely's Upholstery and Canvas, where he was learning to recane and refinish chairs without pay. He served in this "apprenticeship" until May 6, 1987. No documentary evidence in the form of time slips, receipts, and the like, was submitted to verify this appren-

ticeship despite defendant's repeated requests, though plaintiff has produced an affidavit from the owner of Gazely's that confirms that Wielinga was "employed" from February 2 to May 6 to learn caning and refinishing and that Wielinga worked at least thirty-two hours a week during that period. Following Wielinga's return to work and purchase of the vehicle, he continued to experience lower back pain and underwent surgery, resulting in the instant claim of disability.

Any ambiguity in an insurance contract will be construed against the insurer and in favor of coverage. *Auto Club Ins Ass'n v DeLaGarza,* 433 Mich 208, 213-214; 444 NW2d 803 (1989). Similarly, while insurers may limit the risks they choose to assume, it is their responsibility to clearly express the limitations of coverage and any failure to clearly express a limitation of coverage is construed against the drafter. *Id.* at 214-215. Furthermore, any ambiguity, lack of clarity, or confusion in the eligibility clause of a group insurance policy that limits the eligibility for coverage under the group policy will be construed against the drafter and in favor of finding that an insured is eligible for coverage under the policy. See *Norgan v American Way Life Ins Co,* 188 Mich App 158, 162; 469 NW2d 23 (1991).

Thus, our inquiry is whether the term "actively at work" has a restricted meaning requiring that the insured be engaged in gainful employment or whether it is permissive of a broader interpretation. We agree with plaintiffs that a broader interpretation is allowable under the policy at issue. The certificate of insurance issued to plaintiffs in the case at bar does not define the term "actively at work" and, therefore, we give the term its ordinary and plain meaning, avoiding a technical or strained construction. *Mueller v Frankenmuth*

*Mutual Ins Co,* 184 Mich App 669, 674; 459 NW2d 95 (1990).

Accordingly, we first look to the dictionary definition of the word "work." *The Random House College Dictionary* (rev ed), p 1516, defines "work" in pertinent part as follows:

> 1. exertion or effort directed to produce or accomplish something; labor; toil. 2. that on which exertion or labor is expended; a task or undertaking. 3. employment, as in some form of industry, esp. as a means of earning one's livelihood: *to look for work.* [Emphasis in original.]

As can be seen from this definition, while the word "work" encompasses the concept of employment, it is afforded a broader definition and is not synonymous with the term "employment" or, more particularly, "gainful employment." Also of interest to this case is the definition of the word "apprentice,"[1] which *Random House,* p 66, defines in pertinent part as follows:

> A person who works for another in order to learn a trade: *an apprentice to a plumber.* [Emphasis in original.]

Thus, the ordinary and plain meaning of the word "work" indicates that that word is not synonymous with the concept of gainful employment. More to the point, the common and plain meaning of "work" does not necessitate the conclusion that "work" be for remuneration. Accordingly, an unpaid apprenticeship can come within the meaning of the word "work."

This broad interpretation of the term "actively

---

[1] While it is not entirely clear from the record whether Wielinga was engaged in a formal apprenticeship program, that term does seem to accurately describe his relationship with Gazely.

at work" does not contradict the one Michigan case relied upon by defendant, *Smillie v Travelers Ins Co,* 102 Mich App 780; 302 NW2d 258 (1980), which is easily distinguishable from the case at bar. *Smillie* involved the entitlement of a beneficiary under a group life insurance policy to additional benefits under the policy. The insurance company had paid benefits under the policy, but refused to pay additional benefits that would be called for under an increase in coverage that had occurred while the insured was confined to a hospital, some four days before the insured's death. Under the policy, in order for the increase in coverage to be effective, the decedent had to have been actively at work performing all the duties of his employment and performing his work at his customary place of employment. *Id.* at 783. Ultimately, this Court concluded that the trial court did not clearly err in determining that the decedent was not actively at work at the time the increase in coverage went into effect, inasmuch as he was confined to the hospital. *Id.* at 785.

*Smillie* is different from the case at bar in a number of significant aspects. First, *Smillie* involved a group insurance policy issued in an employment context, in which employment with the particular employer was a necessary condition for coverage. Second, the eligibility requirements were not merely that the employee be "actively at work," but also specifically required that the work include all of the duties of his employment and be done at the customary place of employment. No such additional requirements exist in the certificate of insurance at issue in the case at bar. Third, the precise issue involved in *Smillie* is whether a person can be considered to be "actively at work" while confined to the hospital. This Court concluded that the trial court did not clearly err in

answering that question in the negative.[2] For these reasons, *Smillie* provides little enlightenment on the issue presented in the case at bar.

Furthermore, the conclusion that the term "actively at work" could encompass an unpaid apprenticeship is not inconsistent with the purpose behind this eligibility requirement for coverage under the disability insurance policy. The "actively at work" requirement in a group insurance policy serves a legitimate function, namely the determination that the insured is in reasonably good health inasmuch as no medical examination would be required as a condition of receiving coverage. See *Smillie, supra* at 784, quoting *Rabinovitz v Travelers Ins Co,* 11 Wis 2d 545; 105 NW2d 807 (1960). That is, instead of requiring a medical examination to establish that the insured is in sufficiently good health to warrant the insurance company's assuming the risk proposed to be insured against, the insurance company is willing to accept the risk for those individuals who have been able to be actively at work for a certain period before receiving coverage.

In fulfilling this purpose, however, it makes no difference whether the insured is being remunerated for his efforts. Rather, the question is not if and to what extent the insured is being paid, but whether the insured is capable of productive labor, as demonstrated by the fact that he is working. An insured may be unpaid not because he is incapable of work, but because he does not have the necessary skills to be economically productive and is

[2] A similar issue was involved in a Wisconsin case relied upon by both the *Smillie* Court and defendant in the case at bar, *Rabinovitz v Travelers Ins Co,* 11 Wis 2d 545; 105 NW2d 807 (1960). In *Rabinovitz,* the Wisconsin Supreme Court rejected a contention that the employee was actively at work while confined in the hospital merely because it was possible for the employee to perform the duties of his job while so confined.

willing to work in an unpaid position in order to acquire the skills to become economically productive and to eventually receive remuneration for his work. There is no indication from the record before us that Wielinga's apprenticeship was therapeutic or rehabilitative in nature, which might justify the conclusion that it is not "work" for purposes of a disability insurance policy. Rather, the only indication from the record is that Wielinga was actively engaged in an attempt to learn a trade.[3]

For these reasons, we conclude that there is no inherent necessity to interpret the "actively at work" requirement for eligibility for coverage to include the requirement that the "work" be employment for remuneration. While defendant could impose such a requirement, it must clearly express such a requirement in its certificate of coverage, *Norgan, supra,* which it failed to do.

For the above reasons, we conclude that a jury could reasonably reach the determination that Wielinga was engaged in an unpaid apprenticeship that constituted being "actively at work" within the meaning of the eligibility requirements for coverage under the credit disability insurance policy at issue in the case at bar and that defendant is, therefore, liable for payment of the benefits to plaintiffs under that policy. Accordingly, the trial court erred in granting summary disposition in favor of defendant.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiffs may tax costs.

---

[3] Further, even if there were some dispute regarding this issue, that would be a question for the jury to resolve, not for the court.