ALBRIGHT v BUTTERWORTH HMO

Docket No. 132123. Submitted June 9, 1992, at Grand Rapids. Decided July 1, 1992; approved for publication October 14, 1992, at 9:05 A.M.

Donna and Bruce Albright brought an action in the Kent Circuit Court against Butterworth HMO, seeking insurance benefits for injuries received in an automobile accident. The defendant moved for summary disposition, alleging that its group disability insurance policy issued to the plaintiffs provided both for coordination of benefits and nonduplication of benefits, thereby prohibiting double recovery of medical expenses and relieving it of liability because the plaintiffs had recovered all their medical expenses from their no-fault insurer pursuant to an automobile insurance policy that did not provide for coordination of benefits. The court, Roman J. Snow, J., granted summary disposition for the defendant, finding that coordination was authorized by a section of the Insurance Code that allows a group disability insurer to coordinate its payment of benefits with no-fault insurance, MCL 500.3610a; MSA 24.13610(1). The plaintiffs appealed.

The Court of Appeals held:

1. The defendant's plan qualifies as disability insurance.

2. A group disability insurance policy may coordinate benefits payable with benefits payable under a nongroup no-fault policy.

3. The Legislature, in enacting the Coordination of Benefits Act, MCL 550.251 et seq.; MSA 24.13671 et seq., contingent upon enactment of the section of the Insurance Code that specifically authorizes a group disability insurance policy to provide for the coordination of benefits with automobile medical payments insurance, MCL 500.3610a; MSA 24.13610(1), intended that MCL 500.3610a; MSA 24.13610(1) control the coordination of group disability policies with nongroup no-fault policies.

Affirmed.

*Boyden, Waddell & Timmons* (by *Stephen L. Grimm*), for the plaintiffs.

*Miller, Johnson, Snell & Cummiskey* (by *Richard R. Hyde* and *Carolyn E. Gaston*), for the defendant.

Before: SHEPHERD, P.J., and CONNOR and M. F. SAPALA,* JJ.

PER CURIAM. Plaintiffs appeal as of right from the trial court's order of August 1, 1990, granting summary disposition for defendant on the basis of no genuine issue of material fact, MCR 2.116(C)(10). We affirm.

Plaintiffs were injured in an automobile accident on June 17, 1989. They alleged that, under defendant's certificate of coverage, benefits were due them for accidental bodily injury as a result of the accident and that defendant had refused to pay after receiving reasonable proof in support of the claim for medical expenses and services.

Defendant moved for summary disposition of plaintiffs' complaint, arguing that its certificate of coverage provided for both coordination of benefits and nonduplication of benefits, thereby prohibiting any double recovery of medical expenses. By affidavit, defendant established that plaintiffs had recovered all their medical expenses resulting from the accident from their no-fault insurer, pursuant to an automobile insurance policy that did not provide for coordination of benefits. Plaintiffs did not dispute the issues of fact as established by defendant in its motion for summary disposition.

Plaintiffs have raised only one issue on appeal for our resolution: whether the trial court erred in granting summary disposition for defendant because the coordination-of-benefits provision in defendant's health maintenance organization (HMO)

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

contract is invalid under the Coordination of Benefits Act, MCL 550.251 *et seq.*; MSA 24.13671 *et seq.* Plaintiffs argue that MCL 550.253(2); MSA 24.13673(2) prohibits the provision in defendant's contract regarding the coordination of benefits. MCL 550.253(2); MSA 24.13673(2) provides as follows:

> Any such policy or certificate which contains a coordination of benefits provision shall provide that benefits under the policy or certificate shall not be reduced or otherwise limited because of the existence of another nongroup contract which is issued as a hospital indemnity, surgical indemnity, specified disease, or other policy of disability insurance as defined in section 3400 of the insurance code of 1956, Act No. 218 of the Public Acts of 1956, being section 500.3400 of the Michigan Compiled Laws.

Plaintiffs argue that a no-fault policy falls within the definition of a "policy of disability insurance" under MCL 500.3400; MSA 24.13400, thereby making MCL 550.253(2); MSA 24.13673(2) applicable to this case to prohibit defendant's coordination clause.

Defendant contends that under MCL 500.3601; MSA 24.13601 and MCL 500.3610a; MSA 24.13610(1), its certificate of coverage is a group disability insurance policy specifically authorized to provide for the coordination of benefits with automobile medical payments insurance.[1] Those statutes provide in relevant part as follows:

> Group disability insurance is hereby declared to be that form of voluntary disability insurance

---

[1] By the affidavit of Diane Hopper, an employee of defendant's administrator, defendant established that it was approved by the Commissioner of Insurance as a revised group member plan providing medical and hospital services in December 1988.

covering not less than 5 employees or members, with or without their eligible dependents, written under a master policy issued to any governmental corporation, unit, agency, or department thereof, or to any corporation, co-partnership, individual employer, or any association, upon application of any executive officer or trustee of such association having a constitution or bylaws, and formed in good faith for purposes other than that of obtaining insurance where officers, members, employees, or classes or departments thereof may be insured for their individual benefit. [MCL 500.3601; MSA 24.13601.]

(1) A group disability insurance policy may contain provisions for the coordination of benefits otherwise payable under the policy with benefits payable for the same loss under other group insurance; automobile medical payments insurance; or coverage provided on a group basis by hospital, medical, or dental service organizations, by union welfare plans, or employee or employer benefit organizations.

(2) If a group disability insurance policy contains a coordination of benefits provision, the benefits shall be payable pursuant to the coordination of benefits act. [MCL 500.3610a; MSA 24.13610(1).]

The issue before this Court is which of the two acts applies, the Coordination of Benefits Act or the portion of the Insurance Code addressing group disability insurance, MCL 500.3610a; MSA 24.13610(1).

Another panel of this Court rejected the same argument that plaintiffs make, that MCL 550.253(2); MSA 24.13673(2) would bar defendant from coordinating benefits with no-fault automobile insurance, in *Estabrook v Lincoln Nat'l Life Ins Co,* 172 Mich App 450, 452-454; 432 NW2d 733 (1988). The Court held that MCL 550.253(2); MSA 24.13673(2) did not bar coordination with a no-

fault policy because the Legislature enacted the Coordination of Benefits Act contingent upon the enactment of MCL 500.3610a; MSA 24.13610(1). Consequently, the panel believed it was clear that the Legislature intended that MCL 500.3610a; MSA 24.13610(1) control the coordination of group disability policies with nongroup no-fault policies, notwithstanding the more general provisions of the Coordination of Benefits Act. *Id.,* pp 453-454.

Plaintiffs maintain that the *Estabrook* decision is inapplicable because defendant provided only a "certificate" of coverage, rather than a "policy" of insurance. Plaintiffs note that § 3(2) of the Coordination of Benefits Act, MCL 550.253(2); MSA 24.13673(2), applies to both policies and certificates.[2] Plaintiffs contend that because this distinction is not made in MCL 500.3610a; MSA 24.13610(1), the latter statute is not applicable and

---

[2] MCL 550.252; MSA 24.13672 defines "group disability plan" and "policy" and provides five definitions of what constitutes a "certificate." The parties agree that it is the definition of "certificate" provided in subsection a(iv) that applies to defendant's plan. That subsection and other pertinent subsections provide:

(a) "Certificate" means any of the following:

* * *

(iv) A health maintenance contract issued by a health maintenance organization in connection with a group disability benefit plan under which health maintenance services are provided, either directly or through contracts with affiliated providers, to a group of subscribers.

* * *

(c) "Group disability benefit plan" means a program making health . . . benefits available to covered persons because of the covered person's membership in or connection with a particular organization or group, which benefits are provided through 1 or more policies or certificates.

* * *

(i) "Policy" means a group disability insurance policy issued by an insurer in connection with a group disability benefit plan which provides for hospital, medical, surgical, dental, or sick care benefits.

we must look to the more general provisions of the Coordination of Benefits Act. We disagree.

As the panel in *Estabrook, supra,* noted, MCL 500.3610a; MSA 24.13610(1) was intended to apply to the entire Coordination of Benefits Act, and was not intended to merely supplant MCL 550.253; MSA 24.13673. As long as defendant's plan meets the definition of a "group disability insurance policy," the provisions of MCL 500.3610a; MSA 24.13610(1) would still apply in this case despite the definitions found at MCL 550.252; MSA 24.13672.

The Insurance Code's definition of disability insurance is contained in MCL 500.606; MSA 24.1606:

> "Disability" insurance is insurance of any person against bodily injury or death by accident, or against disability on account of sickness or accident including also the granting of specific hospital benefits and medical, surgical and sick-care benefits to any person, family, or group, subject to such limitations as may be prescribed with respect thereto.

We believe defendant's plan qualifies as disability insurance, given the broad language defining disability insurance in MCL 500.606; MSA 24.1606 that encompasses the granting of any medical or accident benefits.

Defendant's plan would also qualify under the definition of a "policy of disability insurance" contained in the Insurance Code because the terms "policy" and "contract" are used interchangeably. MCL 500.3400; MSA 24.13400 provides in pertinent part as follows:

> (1) The term "policy of disability insurance" as used in this chapter includes any policy or con-

tract of insurance against loss resulting from sickness or from bodily injury or death by accident, or both, including also the granting of specific hospital benefits and medical, surgical and sick-care benefits to any person, family or group, subject to the exclusions set forth or referred to in this section.

Consequently, we believe the trial court correctly granted summary disposition in this case under the authority of MCL 500.3610a; MSA 24.13610(1), which allows defendant to coordinate its payment of benefits with no-fault insurance.[3] Plaintiffs' decision not to coordinate benefits under their no-fault policy made the no-fault insurer primary. See *Gibbard v Auto-Owners Ins Co*, 179 Mich App 54, 57; 445 NW2d 182 (1989).

Affirmed.

[3] In furtherance of their position, plaintiffs argue that a no-fault policy falls within the definition of a "policy of disability insurance" under MCL 500.3400; MSA 24.13400, thereby making MCL 550.253(2); MSA 24.13673(2) applicable to this case. Defendant, however, argues that a no-fault policy is liability insurance by definition, therefore MCL 500.3400(2)(a); MSA 24.13400(2)(a) specifically excludes no-fault insurance. Given our conclusion that the Coordination of Benefits Act does not apply, we need not reach this portion of the parties' arguments.